UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| STATE FARM FIRE & CASUALTY CO., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 4:08-CV-51-RM |
| ) | |
| C.W., a minor by his parents ) | |
| B.W. & E.W., *et. al.*, ) | |
| ) | |
| Defendants ) | |

OPINION and ORDER

State Farm Fire and Casualty Company brings this declaratory judgment action against seven people, seeking a declaration that an insurance policy it issued to two of the defendants doesn't cover certain allegations raised in a Tippecanoe County Superior Court suit. State Farm filed two motions for summary judgment. For the reasons that follow, the court GRANTS State Farm's first motion [Doc. No. 31], which relates to counts I and II of the amended complaint, and DENIES State Farm's second motion [Doc. No. 57], which relates to count III.

The underlying facts of this case aren't disputed. State Farm issued a homeowner's insurance policy to J.C.'s parents, F.C. and L.C. During the coverage period, J.C. inappropriately touched two substantially younger children (C.W. and K.W). while at the C. family's home. J.C. was convicted of seven counts of child molestation and his conviction was affirmed. C.W. and K.W., along with their

parents, B.W. and E.W., filed suit in Tippecanoe Superior Court against J.C. for molestation and infliction of emotional distress, and against his parents, F.C. and L.C., for negligent supervision and parental liability.

State Farm seeks a declaration that it has no duty to defend or indemnify J.C. against those claims. State Farm also seeks a non-liability declaration involving the claims against L.C. and F.C. Should their negligent supervision be covered as an "occurrence" under the policy, State Farm seeks a declaration that it was a single occurrence.

A clerk's entry of default was entered against the C. family on March 5, 2009, but State Farm hasn't moved for default judgment against them.

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The court construes the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion can't rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing

2

that there exists a genuine issue for trial. Anderson v. Liberty Lobby, 477 U.S. at 248.

In the context of declaratory judgment actions, "[w]hen . . . the basis of jurisdiction is diversity, most courts rely on the applicable state law to determine which party shoulders the burden of proving the facts." Am. Nat. Fire Ins. Co. v. Rose Acre Farms Inc., 911 F.Supp. 366, 369 (S.D. Ind. 1995). In Indiana, the party seeking the judgment in an action for declaratory judgment carries the burden of proof. Sans v. Monticello Ins. Co., 718 N.E.2d 814, 819 (Ind. Ct. App. 1999). State Farm bears the initial burden of showing that there is no genuine issue of material fact.

State Farm filed two summary judgment motions. In the first motion, State Farm seeks summary judgment on counts I and II of its complaint. State Farm then filed an amended complaint, which left counts I and II unchanged and added a third count. State Farm then filed a second motion for summary judgment on its first amended complaint, in which it sought summary judgment on count III of its first amended complaint.[1]

---

1 The first amended complaint had the legal effect of completely superceding the original complaint. Kelley v. Crosfield Catalysts, 135 F.3d 1202, 1204 (7th Cir. 1998). Because counts I and II of the complaint and the first amended complaint are identical, the court considers the first motion for summary judgment as being addressed to the amended pleading. See Patton Elec. Co., Inc. v. Rampart Air, Inc., 777 F. Supp. 704, 712-13 (N.D. Ind. 1991) (finding that motions to dismiss, which were directed at the original complaint, were sufficient to defend against an amended complaint where the original and amended complaint suffered from the same deficiencies); 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (2d ed. 2009) ("Defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending . . . . To hold otherwise would be to exalt form over substance.").

State Farm seeks a declaration that J.C.'s acts against C.W. and K.W. don't constitute an "occurrence" under the policy. State Farm also seeks a declaration that the policy's liability and medical payment coverage provisions exclude the injuries J.C. caused. Both determinations turn on whether J.C.'s actions were intentional.

The State Farm policy indicates that State Farm will only provide defense and indemnity for an "occurrence," which the policy defines as an accident. The State Farm policy doesn't define the word "accident," but the Indiana Supreme Court has held that "implicit in the meaning of 'accident' is the lack of intentionality." Auto Owners Ins. Co. v. Harvey, 842 N.E.2d 1279, 1283 (Ind. 2006); *see also* Terre Haute First Nat. Bank v. Pacific Employers Ins. Co., 634 N.E.2d 1336, 1338 (Ind. Ct. App. 1993) ("In the context of insurance coverage, an accident means an unexpected happening without an intention or design."). The State Farm policy contains an exclusion stating that the policy's liability coverage and medical payments coverage don't apply to bodily injury that the insured expected or intended. If J.C.'s actions were intentional, State Farm is entitled to a declaration that it owes J.C. neither defense nor indemnity and that State Farm isn't liable for any damages caused by J.C.'s actions.

State Farm argues that J.C.'s actions were intentional because intent is inherent in the crime of child molestation. The W. family argues that intent shouldn't be inferred under the facts of this case.

4

Under Indiana law, a child molestation occurs when a person "performs or submits to sexual intercourse or deviate sexual conduct" with a child under 14 years of age or "performs or submits to any fondling or touching" with a child under the age of 14 "with intent to arouse or to satisfy . . . sexual desires." Ind. Code § 35-42-4-3. The Indiana Supreme Court abuser must commit the act knowingly. Louallen v. State, 778 N.E.2d 794, 797 (Ind. 2002). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2.

The Indiana Court of Appeals has held that molestation was not accidental when the abuser admitted to molesting the victim knowingly or intentionally. State Farm Fire & Cas. Co. v. C.F., 812 N.E.2d 181 (Ind. Ct. App. 2004). The W. family argues that a later Indiana Supreme Court decision, Auto Owners Ins. Co. v. Harvey, 842 N.E.2d 1279 (Ind. 2006), implicitly overruled State Farm v. C.F.. Auto Owners involved an involuntary manslaughter in which an insured intentionally pushed his girlfriend, causing her to fall to her death. The supreme court found it unclear under the controlling insurance policy whether the death was an accidental "occurrence." "If the required 'accident' refers to Gearheart's push, then it is undisputed that it did not occur unexpectedly or unintentionally. If it applies to Brandy's slip, fall, and drowning, however, it is not clear that the drowning was clearly unexpected and unintentional." Id. at 1284. J.C.'s actions consisted of touching K.W. and C.W. and there is no way to separate J.C.'s actions from the harm that befell his victims, as in Auto-Owners. Auto-Owners neither explicitly

5

nor impliedly overrules State Farm v. C.F., so there is no basis to conclude that State Farm v. C.F. is no longer good law.

Therefore, when J.C. was convicted of six counts of child molestation, the state court system established that he knowingly molested C.W. See also Wiseman by Wiseman v. Leming, 574 N.E.2d 327, 329 (Ind. Ct. App. 1991) (" the defendant's acts of child molestation in this case, which are proscribed by our criminal statutes due to the heinous nature of such acts, are inherently harmful to the victim of the crime. Therefore, it can be inferred from these acts that the defendant intended to harm the victim.").

Were J.C. disputing his intent with regard to his conduct with C.W., he would be collaterally estopped from doing so since he already had a chance to present arguments on the issue at his criminal trial. Meridian Ins. Co. v. Zepeda, 734 N.E.2d 1126, 1128 (Ind. Ct. App. 2000). The same cannot be said for the W. family, who were not parties in J.C.'s criminal conviction.

In considering the effect of J.C.'s conviction, the court of appeals' decision in Wolverine Mut. Ins. v. Vance ex rel. Tinsley, 325 F.3d 939 (7th Cir. 2003), is instructive. In Wolverine, an insurance company sought a declaratory judgment regarding the extent of coverage it owed to its policyholder and to the victims of the policyholder's crime. Id. at 941. A jury had previously found the policyholder guilty of a crime involving intent. Id. at 942. The Court of Appeals first found that collateral estoppel did not prevent the victims from litigating the policyholder's intent, explaining that "[b]ecause a tort victim does not have an opportunity to

litigate on his own behalf in a criminal proceeding, Indiana courts have held that a tort victim is not collaterally estopped from relitigating the insured's intent despite a verdict . . . in a criminal trial." Id. at 943 (citing Meridian Ins. v. Zepeda, 734 N.E.2d at 1132; Kimberlin v. DeLong, 637 N.E.2d 121, 125 (Ind. 1994)). The court of appeals nonetheless found that the policyholder's criminal conviction determined the policyholder's intent and, by extension, the insurance company's duties in the subsequent declaratory judgment action. Id. at 944. Because the victim's rights against the insurance company are derivative of the policyholder's rights, the victims were relegated to standing in the policyholder's "legal shoes." Id. Since the policyholder was judicially estopped from denying his intent, so were his victims. Id.

The same logic applies to J.C.'s actions against C.W. A jury found J.C. guilty of knowingly molesting C.W. He is thus collaterally estopped from denying his intent and the W. family, standing in J.C.'s legal shoes, is bound by the jury's verdict in the criminal conviction.

Since J.C.'s intent to molest C.W. was established in his criminal trial, State Farm owes no duty of defense or indemnity to him on the claims involving C.W. in the underlying law suit, and J.C.'s acts towards C.W. are excluded from the policy's liability and medical coverage provisions. State Farm's first motion for summary judgment must be granted with regard to the W. family's allegations regarding C.W.

7

In contrast to the molestation charges regarding C.W., J.C. was not found guilty of molesting K.W. As the Indiana Court of Appeals stated, "The jury did not return a verdict on the count regarding K.W." (doc # 33-2). As a result, J.C. is not collaterally estopped from litigating the issue of his intent with regard to K.W. But the W. family alleges that J.C. committed child molesting with respect to K.W.; if the W. family proves that claim, it will have proven conduct that was intentional rather than accidental, and so outside the scope of the State Farm policy. State Farm's first motion for summary judgment also must be granted with regard to the W. family's allegations regarding K.W.

Since J.C.'s conduct was ongoing for six years, State Farm seeks a declaration that his parents' negligent supervision amounted to, at most, a single ongoing occurrence under the policy. Because there were two victims in this case and as many as six policy years at issue, anywhere from one to twelve occurrences could have taken place, depending on this court's interpretation of the word "occurrence" and the state court's factual findings.

The policy defines an "occurrence" as "an accident, including exposure to conditions," which results in: "bodily injury . . . during the policy period," but warns that "[r]epeated or continuous exposure to the same general conditions is considered to be one occurrence" [Doc No. 1-2 at 25]. State Farm contends that there was one occurrence in this case—F.C. and L.C.'s failure to supervise J.C. The W. family argues that the failure to supervise J.C. constituted a separate occurrence for each policy year. Both parties cite numerous cases in support of

8

their respective interpretations, none of which consider the question under Indiana law.[2]

Insurance policies in Indiana are governed by the same rules of construction that govern other contracts. Buckeye State Mut. Ins. Co. v. Carfield, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009); but see Wagner v. Yates, 912 N.E.2d 805, 810 (Ind. 2009) (noting that some "special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and insureds."). Courts give clear and unambiguous policy language its plain and ordinary meaning. Buckeye State Mut. v. Carfield, 914 N.E.2d at 318. On the other hand, "[w]here there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured." Wagner v. Yates, 912 N.E.2d at 810 (internal quotations omitted).

"The meaning of 'occurrence' as used in . . . insurance policies, can be perplexing in application." Soc'y of Roman Catholic Church of Diocese of Lafayette & Lake Charles, Inc. v. Interstate Fire & Cas. Co., 26 F.3d 1359, 1364 (5th Cir.

---

3   See Soc'y of Roman Catholic Church of Diocese of Lafayette & Lake Charles, Inc. v. Interstate Fire & Cas. Co., 26 F.3d 1359 (5th Cir. 1994) (applying Louisiana law); Lee v. Interstate Fire & Cas. Co., 86 F.3d 101 (7th Cir. 1996) (Rhode Island law); Interstate Fire & Cas. Co. v. Archdiocese of Portland in Oregon, 35 F.3d 1325 (9th Cir. 1994) (Oregon law); State Farm Fire & Cas. Co. v. Elizabeth N., 12 Cal. Rptr. 2d 327 (App. Dist. 1992) (California law); Roman Catholic Diocese of Joliet, Inc. v. Interstate Fire Ins. Co., 685 N.E.2d 932 (Ill. App. Dist. 1997) (Illinois law); Washoe County v. Transcon. Ins. Co., 878 P.2d 306 (Nev. 1994) (Nevada law); Gen. Accident. Ins. Co. of America v. Allen, 708 A.2d 828 (Pa. Super. Ct. 1998) (Pennsylvania law).

9

1994). This might explain why cases with similar facts don't present a consensus regarding the number of occurrences when negligent supervision led to numerous instances of sexual misconduct over multiple policy years.

The court can't agree with State Farm. The molestations occurred over a six-year period in which State Farm issued six different policies. If any of the policies covered an event occurring within the policy period, each policy did; nothing in any policy allows a construction that excludes from coverage a failure to supervise that mirrors a failure to supervise covered by a predecessor policy. Subject to the W. family's ultimate proof in the underlying case, there may have been as many as six occurrences. State Farm is not entitled to summary judgment on count III of its amended complaint.

For the foregoing reasons, the court GRANTS State Farm's first motion for summary judgment [Doc. No. 31] and DENIES State Farm's second motion for summary judgment [Doc. No. 57].

SO ORDERED.

ENTERED:    February 17, 2010    


　　　　　　　　　　　　　　　　  /s/ Robert L. Miller, Jr.    
　　　　　　　　　　　　　　　　Judge
　　　　　　　　　　　　　　　　United States District Court